In re ELECTRON CHEMICAL CO.

(District Court, E. D. New York. November 28, 1913.)

1. BANKRUPTCY (§ 91*) — ACTS OF BANKRUPT — TRANSFER WITH INTENT TO PREFER.

Bankr. Act July 1, 1898, c. 541, § 3a2, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), provides that acts of bankruptcy by a person shall consist of his having transferred while insolvent any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors. Held that, where an involuntary bankruptcy petition is based on such act of bankruptcy, the burden of proving insolvency is on the petitioning creditors, provided the bankrupt appears and produces his books under section 3d, providing that, when a person against whom a petition has been filed as provided under the second and third subdivisions of the section takes issue with and denies the allegation of insolvency, it shall be his duty to appear in court on the hearing, with his books, papers, and accounts, and give testimony concerning his solvency, etc., and in case of his failure so to attend the burden of proving his insolvency shall rest on him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. § 91.*]

2. BANKRUPTCY (§ 91*)—INSOLVENCY—EVIDENCE.

On an answer to an involuntary bankruptcy petition, seeking an adjudication for the making of an alleged preference, evidence held to require a finding that the alleged bankrupt was insolvent at the time the payment was made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. § 91.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Electron Chemical Company, alleged bankrupt. On objections to adjudication. Overruled.

William H. Clark, of New York City, for petitioner.

Briesen & Knauth, of New York City, for alleged bankrupt.

CHATFIELD, District Judge. [1] An involuntary petition was filed on September, 15, 1913, charging a preferential payment of $600 on August 20, 1913. As this alleged act of bankruptcy is set forth in section 3, subd. a2, the burden of proving insolvency is placed upon the creditors if the alleged bankrupt appears and produces its books. Section 3d. Hence in this case the question of insolvency at the time of this payment is substantially the only issue involved.

The alleged bankrupt has appeared in court, submitted its books, and considerable testimony has been taken, from which it appears that the corporation began business without much capital. Whatever has been obtained since for capital stock has apparently been used in the payment of debts. One payment of $2,500, from the money put in by the president and principal stockholder in return for his stock, went to the Butterworth-Judson Company, assignee to a petitioning creditor, whose account at that time was $7,435.28, and at the time of the filing of the petition in bankruptcy is claimed to have amounted to $7,481.32.

[2] A statement of the assets and liabilities of the Electron Chemical Company was made up as of August 20, 1913, by the treasurer, as follows:

| Assets. | | | Liabilities. | | |
|---|---|---|---|---|---|
| Cash ..................... | $ 235 | 16 | Butterworth-Judson Co. ... | $ 6,757 | 58 |
| Merchandise ............... | 4,047 | 56 | Other Creditors .......... | 3,089 | 51 |
| Accounts receivable ...... | 5,279 | 02 | Surplus ................. | 1,622 | 16 |
| Auto truck ............... | 1,006 | 00 | | | |
| Furniture and fixtures..... | 687 | 72 | | | |
| Unexpired insurance ...... | 213 | 79 | | | |
| | $11,469 | 25 | | $11,469 | 25 |

—and a further statement from the books was made up as of September 30, 1913, showing the following:

| Assets. | | | Liabilities. | | |
|---|---|---|---|---|---|
| | | | Accounts Payable. | | |
| Cash ..................... | $ 211 | 75 | | | |
| Notes .................... | 54 | 00 | Butterworth-Judson Co. ... | $ 6,810 | 93 |
| Merchandise ............. | 3,563 | 27 | Other Creditors .......... | 2,199 | 98 |
| Accounts receivable ....... | 4,415 | 27 | Surplus ................. | 1,229 | 79 |
| Auto truck ... .......... | 1,006 | 00 | | | |
| Furniture and fixtures..... | 687 | 72 | | | |
| Stationery stock, etc....... | 150 | 00 | | | |
| Unexpired insurance ...... | 152 | 69 | | | |
| | $10,240 | 70 | | $10,240 | 70 |

By direction of the court during the trial, two appraisers have valued the assets on hand on November 15, 1913, and the testimony of one of these appraisers fixes the amount of $2,745.14 for the entire personal property, including stock, furniture, fixtures, containers, and $200 for the auto truck, said to be out of repair and in storage.

It was admitted on the record that the condition of the concern is no more favorable at the present time than it was upon August 20, 1913, while, on the other hand, no substantial reduction in assets is shown. The sale of merchandise in the ordinary course of business has resulted only in the increase of the bank deposit from $235.16 to $286.38. No salaries have been paid for some time.

The value of the auto truck is stipulated to have been not more than $350 upon August 20th. None of the accounts receivable appear to have been collected since September 30th, and do not appear to be quick assets, nor shown to be good. The merchandise and the containers have depreciated from July 31st, when inventoried at $4,546.73, to $3,642.80, on August 20th, as estimated, or to $3,563.27 on September 30th, as inventoried, and will bring, if sold at the present time, $2,545, as testified by an appraiser designated by the court. Some of the furniture is not paid for and may not be the property of the company.

The appraiser testifies that he figured out the cost as nearly as possible and deducted 25 per cent. This would add $636.25, giving a cost price of $3,181.25, while Mr. Eissing's testimony that 20 per cent. represents gross profit would add $636.25 more, giving $3,817.50 as a gross sales price. It may be assumed for the purposes of testing in-

solvency that the capital stock is wiped out, but the obligation therefor is subsequent to the claims of creditors. The debts amounted to $9,847.09 on August 20th. The item of insurance rebates, $213.79, has not been gone into; but, taking this as an asset at the value given, we have a total as follows:

Insurance unexpired............................................$  213.79
Cash .........................................................   235.16
Accounts receivable...........................................  5,279.02
Auto truck....................................................   350.00
Stock and furniture (actual value or cost price).. ..................  3,181.25
                                                               ----------
    Total ....................................................$9,259.22

From this considerable reduction for bad accounts, some reduction for depreciation of the auto truck, and inability to realize on the balance of the insurance, reduce the net amount of assets still further, and bring them considerably below the liabilities, amounting to $10,524.79 on August 20th.

The condition of insolvency on August 20, 1913, was therefore apparent, both in the sense that the corporation did not have cash or quick assets with which it could pay all its creditors, nor did it have sufficient assets when carefully estimated to show a surplus over its liabilities. The apparent deficit was sufficient to make it plain to the officers of the company (who were familiar with its affairs and must be held responsible therefor) that if payments were made on account of past indebtedness to creditors, the result would be to prefer them over creditors whose debts were not paid, if any unpaid creditor saw fit to object by charging an act of bankruptcy within the four months period.

It is evident that the stockholders and officers fear the result of liquidation in bankruptcy will be failure to completely pay the indebtedness and also a loss of the investment covered by their capital stock, but there seems to be no way of preventing such loss. To dismiss the petition in bankruptcy would not secure the creditors in any way, nor benefit the stockholders, who can apparently protect themselves only by way of a composition or purchase of the business in bankruptcy.

An order of adjudication may be entered.